Good morning, Your Honours. My name is Bernadette Billick-O'Connolly and I am for Bono Council on behalf of Petitioner Mr. Chhuon, and I think the first item of business is to address the jurisdiction as this Court had ordered us to address whether the District Court with whom Mr. Chhuon filed a habeas had actually jurisdiction over the case. And Petitioner respectfully asserts that, yes, the District Court had jurisdiction over the habeas. District Courts are authorized under 28 U.S.C. Section 2241 to consider petition for habeas corpus in final removal orders. Now, that section does require that Petitioner exhaust all administrative remedies, which he did by filing a an appeal with the Board of Immigration Appeals after the immigration judge had ordered him removed. The appeal was dismissed on January 2, 2004, and subsequently the Petitioner filed a habeas. However, before he even filed a habeas, a petition for writ of habeas, he did file a petition for review with this circuit. Why did you dismiss the petition for review? Well, Your Honor, I dismissed the petition for review after I received an order to show cause whether this Court had jurisdiction or did not have jurisdiction. And at that time, when this case was pending, we did not have yet the benefit of the decision, and I probably mispronounced this very badly, but it's Hanak-Laut v. Ashcroft that was decided by this Court on December 20, 2004, which was almost 10 months after we filed the petition for review. At that time, under Matsuk, the only the only guidance that we had was that this Court left open the question whether in cases like this it had jurisdiction to decide it on the merits or not. Do you think you were you don't think you were obligated to pursue that issue with the circuit in your case? At that time, no, Your Honor, because my my client was my client was detained. We had a section 2241 does not per se require that you pursue all judicial avenues. It only statutorily requires that you pursue administrative remedies, which was done in that case. Also, our our client had a twofold claim. One was the withholding of removal claims. The other one was protection under the Convention of Against Torture. And in December 2003, the Court had just decided sin. And in that decision, it had held that a Petitioner could actually file for habeas without having to file a petition for review, and the district court had jurisdiction to review the Convention against Torture claim. So I had to weigh, yes, under had I been extremely cautious and had and had pursued all potential jurisdictional judicial avenues, I would have stayed with the Petition for review. But that is not required. It's required to pursue available avenues. And at that time, the way I read it, it was not sure that the judicial review on the Petition for review was available. The only potential review that was available was whether the Court had actually jurisdiction to adjudicate on the merits. So for all practical purposes, I felt it was in the interest of judicial expediency and also in my client's best interest to pursue the habeas in district court. Okay. I think we understand your argument on that, unless there are other questions. Judge Graber, do you have any questions on the jurisdiction and exhaustion issue? No, I don't. All right. Why don't you proceed to the merits. Oh, thank you, Your Honor. The three points that I want to address. The first one is whether my client, Mr. Chuon, actually suffered past persecution. I think we addressed it in our brief extensively, but there are a couple of additional points that I would like to make. First, persecution has been defined as a threat to life or freedom of or infliction of suffering or harm upon those who differ in a way regarded as differently or offensive. Now, what that means is persecution is not only a physical injury. It is also a threat to life or freedom. My client, although he was only 4 years old when he left the concentration camp or reeducation camp in Cambodia, was deprived of his freedom for 4 years of his life, or 3 years and 8 months, to be precise. He was living under horrendous circumstances that have been well-documented in the record that we have submitted. His father and his mother and his brother, older brother, were also in the concentration camp. The father stated that he was stuffed, whipped, forced to do slave labor. His mother stated that she also was subjected to severe mistreatment, of which she still suffers so much that she has still psychological treatment. Now, one of the arguments that opposing side raises and which is that because Mr. Chuan does not remember much of Cambodia, that because of that, he didn't suffer persecution, and because he was not physically injured. Well, what we would like to point out is, is a little child such as Mr. Chuan does suffer and does experience pain. He has seen his mother suffer because he was visceral. Whether he remembers this or not, it doesn't change the fact that he was – that he suffered, that he was deprived of his liberty, and that he suffered. Now, persecution has been defined also as the infliction of suffering or harm under government sanction upon persons who, again, differ in any way that is regarded as offensive and that is in ways that are despised by civilized governments. And it does not need to be physical again, but it can be such as a deliberate imposition of severe economic disadvantages or, again, the deprivation of liberty, food, housing, employment, or other necessities of life. This child was deprived, again, of liberty, of food. We don't know how much, but his parents were on a starvation diet. There's nothing to indicate that he would not have suffered also food shortage. He was deprived of going to preschool or kindergarten, of doing all the activities that children do. And we respectfully submit that a person who is subjected, whether a child or not, whether with memories or not, to such cruelty has suffered and has been subjected to persecution. And why was he submitted to this persecution? Because of his father, because his father had fought against the Khmer Rouge. Also... Excuse me, counsel, I have a question for you. Can you hear me? Yes. Assuming that you have demonstrated past persecution, it's been 25 years or so since your client was in Cambodia, what is in the record that compels the finding that he's likely to suffer torture or severe consequences in the future? In other words, what is the evidence that compels the finding of future persecution? First of all, if there's past persecution, there is a presumption of future persecution that has not been rebutted by the government. That's only in the asylum contract, though, I thought, not in the past contract. Yes, Your Honor, but there is evidence in the record that shows that Cambodia still violates human rights with impunity. There is evidence that the detainees and prisoners are tortured in Cambodian prisons. And there's also evidence in the record that the detainees, upon returning to Cambodia, are held in detention. And there's evidence that, at a minimum, they were subjected to extortion. And extortion has been, in certain circumstances, defined as persecution. And furthermore, the country conditions have not changed to such an extent that he no longer has to fear to be subjected to torture because of who he was. I see my time is up. May I finish my question? Yes, please do. While on the surface, the government has changed, there is still a continuity that we have shown in the country conditions. For example, the Prime Minister Hun Sen was a member of the Khmer Rouge in the 70s. And in 1998, there was actually a statement by the Senate condemning Hun Sen and his war crimes. That is why we assert that even if he returns now to Cambodia, that he would be subject to persecution. And if not, even if we assume country conditions have changed, he would be subject to the threat of torture because he will be detained. And the conditions in Cambodian jails and prisons and in detention have shown that there are still ongoing torture.  Thank you, Your Honor. Good morning, Your Honors. Alison Daw on behalf of the government, Respondents and Appellees. As a preliminary housekeeping matter, I'd like to note that under Federal Rule of Appellate Procedure 43C2, that Alberto Gonzalez should be substituted for his predecessor, John Ashcroft, as the Attorney General. The Attorney General is named as one of the Respondents in this case. Thank you, counsel. I would agree with counsel for the appellant that the district court had jurisdiction over the habeas. She is correct that there is no requirement, statutory requirement, that is, that judicial remedies be exhausted. There is, however, a prudential requirement, and that was discussed at length in Castro 970, F3, 994. That's a Ninth Circuit case from 2004. And the discussion of prudential exhaustion of judicial remedies begins at page 997 of that decision. So what we have here, though, apparently is that she did attempt to exhaust the remedy, and then our court issued an order to show cause based on its perception of jurisdiction at the time. In response to that, she elects to file a habeas. Do those circumstances, in your view, excuse the exhaustion requirement? I think an argument could be made, Your Honor, that because Unua-Kwalu, the recent case from December, I think could well be perceived as a change in the law, or at least a change in everyone's understanding of what the law was. Prior to that time, everyone understood the final order of removal based on aggravated felony to encompass collateral issues such as relief from removal. And before the Unua-Kwalu case, the Court routinely issued orders to show cause if the order of removal was based on an aggravated felony, as it was in Mr. Chiuan's case. So I think that the Court has two options. It can either deem waive the exhaustion of judicial remedies and continue on the habeas, the appeal of the habeas, or it could transfer the matter to itself as a petition for review and relate it back to the date that the original petition for review was filed so that it would be timely. The petition for review would not have been timely if filed at the same time as the exhaustion of judicial remedies. So I think that the Court has two options. It can either deem waive the exhaustion of judicial remedies and continue on the habeas, the appeal of the habeas, or it can transfer the matter to itself as a petition for review and relate it back to the date that the original petition for review was filed so that it would be timely. Thank you. Okay. We'll proceed with the merits then. I'd like to say, first of all, it is not the government's position that Mr. Chiuan cannot prove that he suffered past persecution because he has no memory of it. The government's position is that Mr. Chiuan failed to prove past persecution even though the individual with the most knowledge of how he was treated in the labor camp, that is, his mother, offered no testimony whatsoever about the treatment that Mr. Chiuan suffered or didn't suffer at the hands of the Khmer Rouge during his infancy in the labor camp. The appellant's brief is a bit imprecise, I think, on the issues of what past persecution was suffered by the family, and I think fails to distinguish between what this – what the evidence is in the record regarding this particular family and the evidence – the general knowledge of the Khmer Rouge that is in the materials that the appellant filed. The family was granted refugee status, apparently. Is that correct, when they first came to this case? Yes, Your Honor. They came as refugees. And was that under some special program or did they receive asylum or – how did they get the refugee status? Do you know? I don't know, Your Honor. I don't think it was an official asylum claim. I believe that it was a refugee. I think after the war that there was a different program in place, but I'm afraid that's outside my realm of expertise. Does that play in the – does that status at all play in the calculation here? I don't believe so, Your Honor. I think that Mr. Chiuan's father certainly could be said to have suffered past persecution based on the evidence in the record. Based upon his testimony that he was subject to whippings and various forms of maltreatment for over a period of almost four years. The problem is that they had the opportunity to put on evidence about how Mr. Chiuan was treated and, in fact, how his mother was treated, and there is very, very little. At the Respondent's brief at pages 2 through 4, there is a discussion of the totality of the evidence from the administrative record on the question of how they were treated by the Khmer Rouge, this particular family. Most of the evidence is from Mr. Chiuan's father, who was separated from the family during the time. Mr. Chiuan and his brother and mother were together, but the men were separated from the women and children. So Mr. Chiuan's father's experiences aren't particularly relevant, and Mr. Chiuan's mother could testify about what happened to Mr. Chiuan, but his mother could have, and she didn't. So we're left to speculate about how Mr. Chiuan was treated in the camp, and I don't believe that there's a basis for finding past persecution, unless the Court wishes to find that every person in Cambodia who was not a member of the Khmer Rouge was persecuted during this time period, because the testimony demonstrates the testimony of Mrs. Ms. Teary, I believe her name is. It's something that the appellants attached in the excerpts of record and also submitted below, that the Khmer Rouge had this social experiment, and that they moved everyone out of the cities, and they moved people into labor camps and into forced agricultural camps. They basically disrupted the entire population of the country during that time period. There is no evidence in the record that Mr. Chiuan's family was put in one of these camps because Mr. Chiuan's father was in the military. Everyone was put in one of these camps. I believe that the government has addressed the rest. There is some information in the record about if the Court were to find past persecution, that it should find that that has been rebutted, because the tertiary circumstances have changed. The government did submit the State Department report on country conditions below, and in the excerpts of record at page 317 is the government's argument before the immigration judge as to why the judge should not find or should find that there is no fear of future persecution or that any presumption has been rebutted. Was there anything else the government would submit on the issue of likelihood of future persecution? Or do you believe that the record is complete on that? I think that the case law would stand for the proposition, Your Honor, that they had the government had its opportunity and is not entitled to a second bite at the apple, so that if the Court were to find past persecution, that the government would have to rest on what it has already submitted. Does the presumption that applies in asylum cases with respect to past persecution, does that presumption also apply in the context of withholding? It applies to withholding of removal. It does not apply to CAT, the Convention Against Torture. Okay. Cambodia presents an odd problem because of the very circumstance you describe. On one hand, one can say, well, if you grant relief here, then it's an automatic grant of relief for everyone who is in the country or most people in the country at that time. On the other hand, it's difficult to say, well, if someone is kidnapped and put in a camp, it would be all right if it were an isolated circumstance in another country, but because it happened on a mass scale in this particular country, we can excuse it. I just find that difficult analytically. What do you think? How would you approach that? I agree that it's a difficult issue. I think that the approach the government has taken in this particular case is to say that if Mr. Chiuan was subject to past persecution, where's the evidence? They had the opportunity below to put the evidence in, to describe how he was treated, to describe the circumstances of his three years, eight months in this camp, and they did not. There is nothing. And that's how you get around it. I think that... Well, I think if you were in another country, though, if you had someone who was imprisoned for three years plus or put in a camp where there was at least some subjective evidence of other beings, it might constitute a different story in terms of our analysis, and that's a bit troubling. Well, I think also the Court has to remember that we're talking about a young child, and it's not at all clear that children are mistreated. They may — I don't know what the culture of Cambodia is. It could be that, you know, communal child raising is the norm and that children, you know, run around and take care of themselves during the day while their parents work in the field. I don't know. I don't know that this child's three years, eight months in a camp were any different than what they would have been. I'm sorry. I think that's a bit rosy view of what was going on in the camps at that time. I have no idea because there's no evidence. Yeah. No, I appreciate your argument. Counsel will give you one minute for rebuttal, even though your time has expired, if you'd like to take it. Well, I'm just addressing the issue again of Mr. Schuon being a little child being put into a prison, into a concentration camp. I think there would be — and maybe it's a little bit provocative, but I think there would be no question that if a Jewish child who was in a German concentration camp during the atrocities that happened in the Nazi regime, that that would be considered persecuted, whether there was evidence that the child was actually beaten or not, I think by the fact that it was put in such an atrocious camp and environment. And that is why, after the war, there were specific programs that actually allowed children who had suffered these things to come to the United States as misplaced persons. And the other issue I wanted to address is, yes, the family was admitted as refugees, and in order to become a refugee, you have to show, as you do here, that you either suffered class persecution or that you have — that there's a reasonable fear of returning to your country of origin. So the U.S. Government, by granting refugee status to the Schuon family, including the children, at one time conceded that there was class persecution.
judges: Thomas, Graber, Paez